# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BUDDY P. KAMAKEEAINA,<br><br>Plaintiff,<br><br>v.<br><br>ARMSTRONG PRODUCE, LTD.,<br><br>Defendant. | Case No. 18-cv-00480-DKW-RT<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; (2) DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND; AND (3) GRANTING DEFENDANT'S MOTION TO STRIKE** |

On December 7, 2018, Plaintiff Buddy P. Kamakeeaina, proceeding pro se, filed a Complaint against Armstrong Produce, Ltd., alleging that he was not hired for a position with Armstrong due to disability and age in violation of the Americans with Disabilities Act (ADA), the Age Discrimination Act, the Age Discrimination in Employment Act (ADEA), and the Rehabilitation Act of 1973. Dkt. No. 1.   On January 23, 2019, Armstrong moved to dismiss each of Kamakeeaina's claims, with the exception of the ADEA claim, with prejudice. Dkt. No. 13.   Although the motion to dismiss was scheduled for a hearing on March 15, 2019, Kamakeeaina did not file a response in opposition by the deadline set by the Local Rules.   Instead, Kamakeeaina filed a response 17 days after the deadline had passed, which Armstrong has moved to strike for that very reason.

Because the Complaint, in some instances, fails to state a claim for relief, it is dismissed in part, as explained below.   However, because, contrary to Armstrong's assertion, Kamakeeaina does not concede in the Complaint that he was using marijuana at the time of his pre-employment interview, the heart of Kamakeeaina's case is not dismissed.   Because Kamakeeaina's response to the motion to dismiss was untimely filed, Armstrong's motion to strike is granted.

## BACKGROUND

## I.    The Complaint

Kamakeeaina asserts claims under at least four federal statutes, together with a claim for intentional infliction of emotional distress.

Under the Age Discrimination Act and the ADEA, Kamakeeaina asserts claims of age discrimination.   In essence, these claims allege that Kamakeeaina was 46 years of age at the time he applied and was passed over for a "Receiver II/Forklift Operator" position with Armstrong, while other applicants were at least 8 to 10 years younger.

The majority of the Complaint, though, is dedicated to claims under the ADA.   In that regard, the Complaint alleges as follows.   Kamakeeaina suffers from post-traumatic stress disorder (PTSD) and depression.   After Armstrong made Kamakeeaina a conditional offer of employment, he was required to, among

other things, pass an on-site drug test.   Kamakeeaina also had a subsequent interview with Armstrong's Human Resources Director Marlene McKenzie (McKenzie).   At that interview, Kamakeeaina told McKenzie that he was registered under Hawaii's Medical Cannabis Program.   After continued conversation between the two, McKenzie told Kamakeeaina that, if his drug test was positive, Armstrong would need to withdraw its employment offer. Thereafter, Kamakeeaina said to McKenzie that he was "prepared to have the offer taken off the table."   After further conversation, but without McKenzie administering a drug test, she withdrew Kamakeeaina's employment offer.   Based upon his conversation with McKenzie, as well as her conduct, Kamakeeaina alleges that a host of statutory provisions under the ADA were violated. Principally, though, the Complaint alleges a failure-to-hire claim under the ADA.

The Complaint also attempts to allege violations of the Rehabilitation Act. Although the factual allegations are sparse to non-existent in this regard, it appears that these alleged violations are premised upon the same allegations on which Kamekeeaina's ADA claim is premised, along with Armstrong having a contract in excess of $10,000 with the federal government and/or receiving federal financial assistance.

## II.  **The Motion to Dismiss and Subsequent Filings**

The Motion to Dismiss seeks dismissal with prejudice of Kamakeeaina's Age Discrimination Act, ADA, Rehabilitation Act, and intentional infliction of emotional distress claims.   Armstrong moves for such relief under Federal Rule of Civil Procedure 12(b)(6).   The Motion to Dismiss states that Armstrong does not seek dismissal of any claim under the ADEA.

A hearing on the Motion to Dismiss was set for March 15, 2019.   Dkt. No. 15.   Pursuant to Local Rule 7.4, this meant that a response in opposition was due on February 22, 2019.   After that day came and went, Armstrong timely filed a reply in support of the Motion to Dismiss on March 1, 2019.   Dkt. No. 16.   In reply, Armstrong asserted that an opposition had not been filed and asked for the Motion to Dismiss to be granted for the reasons set forth therein.

On March 4, 2019, Kamakeeaina filed a "Motion for Time Extension of the March 15th, 2019 Hearing Regarding Defendant's motion to Dismiss Plaintiff's Employment Discrimination Complaint" ("the motion for extension of hearing"). Dkt. No. 17.   A day later, construing the motion for extension of hearing as seeking a postponement of the March 15, 2019 hearing, the Court denied the same as moot because, at the same time, the Court elected to decide the Motion to Dismiss without a hearing, pursuant to Local Rule 7.2.   Dkt. No. 18.

Nevertheless, on March 11, 2019, Kamakeeaina filed a response in opposition to the Motion to Dismiss. Dkt. No. 21. The response is 36 pages in length and does not contain a certificate from Kamakeeaina as to whether it complies with the word limitation set forth in Local Rule 7.5(b). In large part, the response essentially re-states, in verbatim fashion, the allegations of the Complaint. One thing (or things) the response does add, however, are 29 exhibits, including a CD purportedly containing the conversation between Kamakeeaina and McKenzie. Armstrong has moved to strike Kamakeeaina's response for violating the Local Rules and/or due to prejudice ("the Motion to Strike"). Dkt. No. 23.

## STANDARD OF REVIEW

### I. Motion to Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all

5

of the allegations contained in a complaint is inapplicable to legal conclusions."
*Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

## II.   Pro Se Status

The Court liberally construes a pro se Complaint. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). With that in mind, "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, the Court cannot act as counsel for a pro se litigant or supply the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). In addition, a pro se litigant must still follow this Court's Local Rules and the Federal Rules of Civil Procedure.

*King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by*

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 925, 928 (9th Cir. 2012).

## DISCUSSION

### A.    The Motion to Strike

As Armstrong asserts in its Motion to Strike, Kamakeeaina's response in

opposition to the Motion to Dismiss is undoubtedly untimely.    Because the

Motion to Dismiss was initially scheduled for a hearing on March 15, 2019,

pursuant to Local Rule 7.4, Kamakeeaina's response was due on or before

February 22, 2019.    No response was filed by that deadline.    Instead, the instant

response was filed on March 11, 2019–17 days late.    In the response,

Kamakeeaina provides no explanation for this delay, and he also fails to make any

argument that the time to file a response should be extended.    Because

Kamakeeaina makes no attempt to defend the late filing of his response, the Court

will not do so either.    As a result, pursuant to Local Rule 7.4, the Court GRANTS

the Motion to Strike and instructs the Clerk to STRIKE the response at Dkt. No.

21.[1]

---

[1]The Court notes that the response itself adds very little to the resolution of the Motion to Dismiss, given that the response, in large part, simply regurgitates the Complaint.   The purpose of the response, instead, appears to have been to place before the Court a very large number of exhibits.   Some of those exhibits appear to be print-outs of various statutes, while others purport to be evidentiary support for the factual allegations in the Complaint.   As for the latter, the Court cannot consider them at this point in the proceedings.   As for the remaining documents,

Essentially, therefore, the Motion to Dismiss is unopposed.   Nonetheless, the Court will review the substantive merits of the Motion to Dismiss in order to determine whether Armstrong, as the movant, is entitled to the relief it seeks.

## B.    The Motion to Dismiss

As already mentioned, Armstrong seeks dismissal of Kamakeeaina's claims under the Age Discrimination Act, the ADA, and the Rehabilitation Act, and for intentional infliction of emotional distress.   The Court addresses these arguments, in turn, below.

### 1.    The Age Discrimination Act

Armstrong argues that any claim under the Age Discrimination Act must be dismissed because that statute does not apply to the employment practices of an employer.   Although it does not appear that the Ninth Circuit has addressed this specific issue, the Court agrees with Armstrong for purposes of this case.

As Kamakeeaina asserts in the Complaint, the Age Discrimination Act provides that no person shall, "on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program

---

Kamakeeaina provides no explanation why they should be considered.   *See United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003) (explaining that a court may consider certain documents attached to a complaint, as well as documents incorporated by reference in the complaint or matters of judicial notice, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment).

or activity receiving Federal financial assistance." 42 U.S.C. § 6102. The closest the Complaint gets to alleging that Armstrong receives federal financial assistance is in asserting that it has "business transactions with the federal government." Compl. at 15, Dkt. No. 1.[2] The Complaint provides no further factual allegations about Armstrong's alleged "business transactions" with the government. To the extent Kamakeeaina means procurement contracts, such contracts are not a form of federal financial assistance contemplated by the statute. *See Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209 (9th Cir. 1984) (explaining that "federal financial assistance" under the Rehabilitation Act does not include procurement contracts, such as "contracts in which goods or services are sold or purchased by the government at fair market value); 34 C.F.R. § 110.3 (applying the same interpretation to "[f]ederal financial assistance" in the Age Discrimination Act). Therefore, any claim under the Age Discrimination Act is subject to dismissal in that it fails to allege that Armstrong receives federal financial assistance.

In addition, there is no reason to grant Kamakeeaina leave to amend this claim. This is because the Age Discrimination Act further provides that, nothing in the statute, should be construed as authorizing an action "by any Federal

---

[2]The Court notes that, for part of the Complaint, Kamakeeaina uses numbered paragraphs, *see* Compl. at 1-8, and, for the remainder of the Complaint, he does not, *see id*. at 9-20. Where the Complaint uses numbered paragraphs, the Court cites to the same. Where the Complaint does not, the Court cites to the applicable page number(s).

department or agency with respect to any employment practice of any employer….." 42 U.S.C. § 6103(c)(1). Although this language could be construed as limiting only a federal department or agency from bringing an action against an employer, the Court agrees with, as far as this Court can tell, every district court to have addressed the issue that an individual also does not have authority to bring an action under the Age Discrimination Act against an employer. *See, e.g.*, *Tyrrell v. City of Scranton*, 134 F. Supp. 2d. 373, 381-383 (M.D.Pa. 2001) (finding that the Age Discrimination Act does not support a claim for discrimination in an employer's employment practices). This is especially so given that the Age Discrimination Act expressly provides that the ADEA–a statute under which Kamakeeaina appears to seek the exact same relief as under the Age Discrimination Act–is untouched by the limitations on suing an employer in the Age Discrimination Act. *See* 42 U.S.C. § 6103(c)(2).

As a result, the Motion to Dismiss is granted with respect to Kamakeeaina's claim under the Age Discrimination Act, and that claim is dismissed with prejudice.

## 2. **The ADA**

The ADA prohibits certain employers from discriminating against a "qualified individual on the basis of disability in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To allege a prima facie case of discrimination under the ADA, a plaintiff must allege that (1) he is disabled within the meaning of the statute, (2) he is a "qualified individual" under the statute, and (3) he was discriminated against because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

In the Complaint, it is alleged that Armstrong violated the ADA by failing to hire Kamakeeaina, by failing to provide a reasonable accommodation, and in violating various other provisions of the statute. The Court addresses Armstrong's arguments with respect to each of these claims in turn.

### a.    Failure to Hire

Armstrong argues that Kamakeeaina's failure-to-hire claim should be dismissed because he is not a qualified individual with a disability and because no adverse action was taken against him due to a disability. Both of these arguments are premised upon a single line of attack. More specifically, Armstrong argues that, because Kamakeeaina has admitted in the Complaint that he was using marijuana, he is not a qualified individual with a disability for purposes of the

11

ADA and the failure to hire him could not have been due to a disability. While

Armstrong correctly asserts that, under the ADA, an individual "currently

engaging" in the use of illegal drugs (such as marijuana) is not a qualified

individual with a disability, *see* 42 U.S.C. § 12114(a),[3] contrary to Armstrong's

assertion, it is simply not alleged in the Complaint that Kamakeeaina was using

drugs at the time of his interview with McKenzie or in the days or weeks before

the same.

Instead, Kamakeeaina goes out of his way to allege in the Complaint that "at

no time during the entire [interview with McKenzie] did I admit, confess, or make

any voluntary comments regarding any current engagement in the illegal use of

drugs." Compl. at 19 (emphasis omitted). Whether Kamakeeaina was actually

using marijuana is notably left absent from the Complaint, but that does not change

the fact that, on the face of the Complaint, Kamakeeaina does not allege he was

using marijuana.

Faced with this problem, Armstrong relies on alleged events that transpired

or statements that were made during the interview with McKenzie. None of those

alleged events or statements, though, "affirmatively disclosed" Kamakeeaina's use

---

[3]The Court notes that, as interpreted by the Ninth Circuit, the phrase "currently engaging" in the use of illegal drugs "is not intended to be limited to the use of drugs on the day of, or within a matter of days or weeks before, the employment action in question." *Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir. 1995).

of marijuana, as Armstrong suggests. Armstrong asserts, for example, that Kamakeeaina provided McKenzie with a "medical marijuana certification card" and, after doing so, he stated that he was prepared to have the offer of employment "taken off the table" if he failed a drug test. Neither of those matters involve Kamakeeaina telling McKenzie that he was using drugs. Instead, drawing that conclusion is only possible if the *assumption* is made that Kamakeeaina was then using drugs in light of the alleged facts. This much is borne out by Armstrong's subsequent argument that "only one reasonable inference" can be made from the alleged facts, which is purportedly that Kamakeeaina was using marijuana.

Armstrong's "reasonable inference," however, is not the only one that can be drawn from the alleged facts. This is especially so where, as here, the Complaint alleges later in the same relevant paragraph that Kamakeeaina also said to McKenzie that he "wanted to be straight-up from the beginning and if I were to get the job, it'll be a way easier transition for everyone involved." Compl. at ¶ 20. To the extent Armstrong believes that Kamakeeaina's statement–that he was prepared to have the employment offer "taken off the table"–meant that he thought he would fail a drug test, his subsequent statement–about there being an easier transition if he were to get the job–arguably indicates that he did not believe that he would fail such a test. Indeed, Kamakeeaina's willingness to have the offer taken

off the table, by itself, leads to the equally reasonable inference that he was confident that he would not fail any administered drug test. Put simply, because the Complaint does not allege that Kamakeeaina told McKenzie he was "currently engaging" in the use of illegal drugs, and because nothing he said leads to that inevitable inference, at this point in proceedings, the Court rejects Armstrong's assertion that Kamakeeaina is not a qualified individual with a disability under the ADA.[4]

Because Kamakeeaina's purported use of marijuana is the only basis upon which Armstrong argues that his failure-to-hire claim should be dismissed, the Court denies the Motion to Dismiss with respect to such claim.

### b.    Reasonable Accommodation

Discrimination under the ADA includes the failure to make a "reasonable accommodation" unless the employer can demonstrate that the accommodation would impose an "undue hardship" on its business. 42 U.S.C. § 12112(b)(5)(A). In addition, an employer may not deny an employment opportunity to a job applicant if the denial is based upon the need to make a reasonable accommodation. *Id*. § 12112(b)(5)(B).

---

[4]Armstrong also argues that, in the Complaint, Kamakeeaina failed to allege that he was not using marijuana at the time of his interview. While that is true, Armstrong fails to explain how that is relevant to analyzing whether the Complaint alleges a *prima facie* case of discrimination under the ADA.

Armstrong argues that any reasonable accommodation claim fails because, even if Kamakeeaina was entitled to coverage under the ADA, using marijuana is not a reasonable accommodation.   The Court agrees.[5]   This is because the ADA clearly provides that a person cannot be a qualified individual with a disability if they are engaging in the use of illegal drugs and only qualified individuals are entitled to reasonable accommodations.   *See id.* §§ 12114(a), 12112(a).

At this point in proceedings, however, the Court's greater concern with the reasonable accommodation claim is that the Complaint does not actually allege that Kamakeeaina asked for any sort of accommodation, does not identify what that accommodation was, does not explain how the accommodation was reasonable, and does not assert that Armstrong denied the accommodation.   Simply put, the applicability of accommodations cannot even be inferred from the Complaint in the context of the facts alleged.

In that regard, ordinarily, an employee or applicant must make an initial request for an accommodation.   *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001).   An exception to this general rule occurs when "the employer (1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3)

_____

[5]To be clear, though, as explained above, the Court does not agree that, as alleged in the Complaint, Kamakeeaina was using marijuana.

knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." *Id*. (quotation omitted). Here, the Complaint does not allege that Kamakeeaina's alleged disabilities prevented him from requesting an accommodation.

Instead, at best, it appears that the Complaint alleges Kamakeeaina was somehow prevented from requesting an accommodation due to McKenzie's "coercive intent" in allegedly telling Kamakeeaina to withhold any additional medical information. Compl. at 11. Putting aside for now the Complaint's strained assertion that McKenzie coerced Kamakeeaina into doing (or not doing) anything, as well as whether any such assertion (even if true) amounts to a claim of discrimination under the ADA, the Complaint still fails to allege what accommodation Kamakeeaina would have requested if he had not purportedly been prevented from asking for one. Armstrong cannot be liable for failing to engage in an interactive process if there would have been no such process in any event.

Ultimately, the Complaint fails to set forth any claim related to a failure to provide a reasonable accommodation. As a result, the reasonable accommodation claim is subject to dismissal. However, because the basis for the claim is far from clear and because it is entirely uncertain what type of accommodation Kamakeeaina believes Armstrong should have provided him, the Court will allow

leave to amend this claim should Kamakeeaina choose to re-assert it.   To be clear, however, should Kamakeeaina re-assert it in any amended complaint he may file, among other things, he **must** allege what reasonable accommodation he either did request or would have requested from Armstrong.   In addition, the accommodation may not be the use of marijuana.

### c.   <u>Section 12203(b)</u>

Section 12203(b) of Title 42 makes it unlawful to "coerce, intimidate, threaten, or interfere" with any individual in the exercise or enjoyment of their rights under the ADA.   42 U.S.C. § 12203(b).

In the Complaint, Kamakeeaina appears to allege that this provision was violated when McKenzie told him that he did not need to disclose medical information and when she said, "No, please don't" when he attempted to discuss his "medical issues."   *See* Compl. at 11-12 & ¶¶ 12-13.   In the Motion to Dismiss, Armstrong essentially argues that Kamakeeaina is not protected by this provision because he was using marijuana.

Because, as set forth above, the Complaint does not allege that Kamakeeaina was using marijuana, Armstrong's argument misses the mark.   Nonetheless, on the face of the allegations in the Complaint, Kamakeeaina has not alleged any form of coercion, intimidation, threat, or interference pursuant to any plain meaning of

those terms.  *See Walker v. City of Lakewood*, 272 F.3d 1114, (9th Cir. 2001) (interpreting an identical provision in the Fair Housing Act, and giving the terms "coercion," "interference," and "threaten" their plain meaning).   Equally important, other than alleging that coercion somehow relates to his reasonable accommodation claim, the Complaint fails to identify any right under the ADA that Kamakeeaina could not exercise or enjoy due to Armstrong's alleged coercion or other prohibited conduct under Section 12203(b).   Indeed, when read in context, the allegations of the Complaint appear to suggest the opposite of coercion or interference during the meeting between McKenzie and Kamakeeaina.

However, because it is far from clear what the factual basis is for any claim under Section 12203(b), the Court will allow Kamakeeaina an opportunity to amend this claim to the extent he so chooses.   Should he decide to re-allege this claim, among other things, Kamakeeaina **must** address the deficiencies identified above.

### d.   Section 12112(d)(2)(A)

Section 12112(d)(2)(A) of Title 42 prohibits, except under certain circumstances, an employer from conducting a medical examination of a job

applicant or making inquiries about whether the applicant is an individual with a disability or the severity of the disability. 42 U.S.C. § 12112(d)(2)(A).

As with many of the ADA provisions upon which Kamakeeaina relies in the Complaint, his reliance on Section 12112(d)(2)(A) consists of quoting the provision verbatim after a series of assumptions he makes from the alleged facts and saying that the provision has been violated. *See* Compl. at 12-13. The Complaint, however, does not allege, in any form of clear or plain manner, facts suggesting that Section 12112(d)(2)(A) has been violated. In fact, with respect to this provision, the Complaint forecloses any suggestion that the provision was violated, as it is specifically alleged that Armstrong did not conduct a medical examination and did not make inquiries about whether Kamakeeaina was disabled. *See id.* at ¶¶ 12-13, 25.

As a result, any claim under Section 12112(d)(2)(A) is dismissed, and, because the Complaint forecloses any such claim, it is dismissed without leave to amend. The Motion to Dismiss is, therefore, granted with respect to this claim.

### e.     <u>Section 12112(d)(3)(B)</u>

In a somewhat related fashion, Section 12112(d)(3)(B) provides that an employer may conduct a medical examination following an employment offer, provided that certain conditions are met. 42 U.S.C. § 12112(d)(3).

In the Complaint, Kamakeeaina appears to allege that Armstrong violated one of the conditions for conducting a medical examination when it allegedly failed to retain the medical records he gave to McKenzie. Compl. at 11-12.

As with Kamakeeaina's claim under Section 12112(d)(2)(A), however, this claim is also foreclosed by the factual allegation in the Complaint that Armstrong did not conduct a medical examination of Kamakeeaina. *Id*. at ¶ 25. As a result, the conditions of Section 12112(d)(3)(B) could not have applied to the medical information that Kamakeeaina alleges he voluntarily handed to McKenzie. *See id*. at ¶¶ 7, 10.

Therefore, any claim under Section 12112(d)(3)(B) is dismissed without leave to amend, and the Motion to Dismiss is granted with respect to the same.

   **f.      Section 12112(b)(7)**

In a similar vein, Section 12112(b)(7) of Title 42 prohibits an employer from:

> failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect

the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure).

42 U.S.C. § 12112(b)(7).

In short, Section 12112(b)(7) prohibits an employer from administering a test that reflects an applicant's impairments rather than his aptitude. Here, putting aside that there is no allegation that Armstrong's drug test would have tested Kamakeeaina's alleged impairments rather than his aptitude, the Complaint alleges that *no test* was administered to Kamakeeaina. Therefore, Section 12112(b)(7) simply does not apply to (and is foreclosed by) the facts alleged in the Complaint. *See id.* ("when such test is administered to a job applicant or employee"); *see also Positano v. Pa. Dep't of Corr.*, 2018 WL 3521191, at *13 (M.D.Pa. May 16, 2018) (explaining that, "when an employer does use testing," it must comply with Section 12112(b)(7)).

As a result, any claim under Section 12112(b)(7) is dismissed without leave to amend, and the Motion to Dismiss is granted with respect to the same.

g. **Section 12112(b)(6)**

Section 12112(b)(6) of Title 42 provides that an employer may not, except in certain circumstances, use "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities…." 42 U.S.C. § 12112(b)(6).

In the Complaint, although Kamakeeaina quotes the language of the above provision in a section of the Complaint that concerns a claim under a statute other than the ADA, *see* Compl. at 15-16, to the extent he is asserting a claim under the ADA, it appears to be premised upon McKenzie allegedly regarding his medical marijuana certification card as a violation of Armstrong's drug policy. Assuming for the sake of argument that McKenzie's alleged assumption about the medical marijuana certification card can be considered "selection criteria" for purposes of Section 12112(b)(6), there is no allegation in the Complaint that this purported selection criteria screened or tended to screen out individuals or a class of individuals with a disability. For example, there is no allegation that Armstrong's alleged selection criteria screened or tended to screen out individuals with Kamakeeaina's alleged disabilities–PTSD and depression. Instead, liberally construing the Complaint's allegations (and even the Complaint's legal arguments), Armstrong's alleged selection criteria, at most, screened out individuals in possession of a medical marijuana certification card, which is not,

itself, a disability.  *Cf. Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.6 (2003) (disapproving of an argument that, because an employee's conduct was related to his alleged disability, the employer's refusal to rehire him on account of that conduct violated the ADA).

As a result, whether construed as a claim of disparate treatment, disparate impact, or both, any claim under Section 12112(b)(6) is subject to dismissal. Moreover, the Court dismisses any such claim without leave to amend.   In the Complaint, with respect to this claim, Kamakeeaina merely quotes verbatim Section 12112(b)(6) and makes a legal argument that McKenzie's conduct should be seen as violating the same.   In other words, there are no factual allegations in the Complaint supporting a claim under Section 12112(b)(6).   Merely quoting the provision in the Complaint should not entitle Kamakeeaina to leave to amend. Therefore, the Motion to Dismiss is granted with respect to any claim under Section 12112(b)(6).[6]

### 3.      The Rehabilitation Act

---

[6]The Court notes that, in the Complaint, Kamakeeaina, on two occasions, also quotes verbatim Section 12112(b)(1) of Title 42.   *See* Compl. at 11, 13.   Unlike the other ADA provisions quoted in the Complaint, Armstrong does not specifically address Section 12112(b)(1) in its Motion to Dismiss.   As such, this Court does not either, and does not dismiss any claim under that provision.

In the Complaint, Kamakeeaina asserts, without any further factual development, that Armstrong's alleged violations of the ADA also violate the Rehabilitation Act. Compl. at 16. As is the modus operandi of the Complaint, it also quotes verbatim two statutory provisions from the Rehabilitation Act. *Id.* The first quoted provision concerns, among other things, contracts with the federal government in excess of $10,000 for the procurement of personal property and nonpersonal services. *See* 29 U.S.C. § 793(a). Such contracts must contain a provision requiring the contracting party to take affirmative action to employ qualified individuals with a disability. *Id.* The second quoted provision concerns, among other things, programs or activities receiving federal financial assistance. *See id.* § 794(a).

The Complaint provides no factual allegations to support violations of either of these statutory provisions. As mentioned above, the closest the Complaint gets to alleging even an interaction between Armstrong and the federal government is in asserting that the two have unidentified business transactions. As further mentioned above, given that "federal financial assistance" in the Rehabilitation Act does not include procurement contracts, *see Jacobson*, 742 F.2d at 1209, this would seem to preclude any claim under Section 794(a). As for Section 793(a), there is no allegation that a contract in excess of $10,000 exists between

Armstrong and the federal government, or, even if there was such a contract, that it does not include the required contractual provision.   More important, for the survival of any such claim, the Ninth Circuit has held that there is no private right of action under Section 793.   *See Fisher v. City of Tucson*, 663 F.2d 861, 867 (9th Cir. 1981).

As a result, any claim under Section 793(a) of Title 29 is dismissed without leave to amend, and the Motion to Dismiss is granted with respect to such a claim. As for Section 794(a), although the factual allegations appear to very much suggest that there is no opportunity that Section 794(a) applies here, because Kamakeeaina is proceeding pro se and it is not impossible that he may be able to allege facts showing the provision's applicability, the Court will allow him an opportunity to amend this claim.[7]   In doing so, Kamakeeaina must allege how Armstrong receives, if any, "federal financial assistance."

### 4.      Intentional Infliction of Emotional Distress

In Hawaii, a claim of intentional infliction of emotional distress requires a plaintiff to allege: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme

---

[7]That being said, pursuant to Section 794(d), determining whether a violation of Section 794(a) has occurred is dependent upon whether a violation of the ADA has occurred.   42 U.S.C. § 794(d).   As a result, Kamakeeaina's claim under Section 794(a) is dismissed with prejudice to the extent his claims under the ADA have been dismissed with prejudice, as set forth above.

emotional distress to another." *Hac v. Univ. of Haw.*, 73 P.3d 46, 60-61 (Haw. 2003).

In the Complaint, unlike the claims discussed above, Kamakeeaina does not set forth any claim for intentional infliction of emotional distress under a separate heading. Instead, there is simply a single conclusory assertion that "Armstrong is liable for the intentional infliction of emotional distress …." *See* Compl. at 17. This, obviously, does not set forth a plausible claim of intentional infliction of emotional distress, however liberally the Court may choose to interpret that assertion. *See Iqbal*, 556 U.S. at 678 (explaining that a court need not accept legal conclusions). Moreover, in light of the allegations set forth in the Complaint, the Court does not believe that there is any way in which this claim can be saved by amendment. If one thing is clear from the Complaint, it is that McKenzie did not act outrageously, as that term is applicable to a claim of intentional infliction of emotional distress, during her meeting with Kamakeeaina. *See Tseu ex rel. Hobbs v. Jeyte*, 962 P.2d 344, 352 (1998) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

As a result, Kamakeeaina's claim for intentional infliction of emotional distress is dismissed without leave to amend, and the Motion to Dismiss is granted with respect to the same.[8]

## III.   Limited Leave to Amend

To the extent set forth above, Kamakeeaina may amend the Complaint to cure the deficiencies that have been identified in this Order.   More specifically, Kamakeeaina is granted leave to amend his claims under: (1) the ADA for (i) an alleged violation of Section 12203(b), and (ii) failure to provide a reasonable accommodation; and (2) the Rehabilitation Act for an alleged violation of Section 794(a).   In addition, although Kamakeeaina need not amend his claim under the

---

[8]The Court notes that, in the Complaint, Kamakeeaina references (and dedicates a separate section to) the federal Drug-Free Workplace Act (DFWA).   Compl. at 15.   It is far from clear whether Kamakeeaina intends to allege a claim under the DFWA or, instead, merely intends to assert that Armstrong inappropriately applied the DFWA to him and, in doing so, somehow violated another statute.   In essence, the Complaint appears to assert that the DFWA applies only to employees rather than job applicants, and, because Kamakeeaina was a job applicant, Armstrong could not use the statute as a reason not to give him a job.   Assuming for the sake of argument that a private right of action exists under the DFWA, the Complaint does not (and cannot) state a claim based upon Armstrong's alleged reliance on the DFWA.   Notably, the language from the DFWA to which the Complaint quotes merely requires a contracting party to do certain minimum things in order to be considered as providing a drug-free workplace.   *See* 41 U.S.C. § 8102(a).   The DFWA does not prevent a contracting party from doing more, however, to ensure its workplace is drug-free, such as requiring job applicants to take a drug test. Moreover, the DFWA does not regulate drug testing.   *See Harris v. Aerospace Testing All.*, 2008 WL 111979, at *4 (E.D. Tenn. Jan. 7, 2008) (explaining that the DFWA neither "requires nor regulates drug screening," and thus, the defendant could not have violated the statute in allegedly negligently administering a drug test).   Therefore, it cannot be said that Armstrong violated the DFWA, and, to the extent any claim is related thereto, the claim is dismissed without leave to amend.

ADEA and his claims under the ADA for a failure to hire and for an alleged violation of Section 12112(b)(1), he <u>must</u> re-allege those claims in any amended complaint he may file in order to proceed with them.

Kamakeeaina may <u>neither</u> re-allege <u>nor</u> amend any claims: (1) under the Age Discrimination Act; (2) under the ADA for alleged violations of (i) Section 12112(d)(2)(A), (ii) Section 12112(d)(3)(B), (iii) Section 12112(b)(7), and (iv) Section 12112(b)(6); (3) under the Rehabilitation Act for an alleged violation of Section 793(a); (4) under the DFWA, if any; and (5) for intentional infliction of emotional distress.

Kamakeeaina may not incorporate any part of the original Complaint, Dkt. No. 1, in any amended complaint he may file.   To the extent any claims are not re-alleged in an amended complaint, they may be deemed voluntarily dismissed.   *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled).   In addition, to the extent an amended complaint is not filed by the deadline set forth below, this case will proceed only with the claims alleged in the original Complaint that have survived dismissal in this Order.

**IV.**   <u>**Conclusion**</u>

The Motion to Dismiss, Dkt. No. 13, is GRANTED IN PART and DENIED IN PART.   The Motion to Strike, Dkt. No. 23, is GRANTED, and the Clerk is instructed to STRIKE the response docketed at Dkt. No. 21.

The Complaint, Dkt. No. 1, is DISMISSED IN PART WITH LEAVE TO AMEND as set forth herein.

The Complaint, Dkt. No. 1, is DISMISSED IN PART WITHOUT LEAVE TO AMEND as set forth herein.

Kamakeeaina may have until **April 26, 2019** to file an amended complaint to the extent allowed herein.   **The Court cautions Kamakeeaina that failure to file an amended complaint by April 26, 2019 may result in the dismissal of those claims that the Court has only thus far dismissed with leave to amend in this Order.**

IT IS SO ORDERED.

Dated: March 22, 2019 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge